UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

ANTONIO CANDIA-RINCON,

    Petitioner,

v.

No. 1:25-CV-251-H

KRISTI NOEM, et al.,

    Respondents.

## ORDER

Before the Court is Antonio Candia-Rincon's emergency motion for a temporary restraining order or preliminary injunction. Dkt. No. 2. Candia-Rincon contends that his detention without bond, under recent Board of Immigration Appeals precedent, violates the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act. *Id.* at 8. But this argument flatly contradicts longstanding principles of constitutional law, the statute's plain language, and the history of legislative changes enacted by Congress. Thus, Candia-Rincon fails to meet the high bar for emergency relief, and the Court denies the motion.

## 1. Background

Candia-Rincon is a citizen of Mexico who illegally entered the United States in 2004. Dkt. No. 2 at 8. He has remained in the United States since that date. *Id.* at 12. In November 2025, Candia-Rincon was taken into custody by officers with U.S. Immigration and Customs Enforcement (ICE). *Id.* He is currently detained without bond at the Bluebonnet Detention Center in Anson, Texas. *Id.* at 12–13.

Shortly after his detention began, Candia-Rincon filed a petition for a writ of habeas corpus requiring the respondents to either release him immediately or provide a bond

hearing before a neutral immigration judge. Dkt. No. 1 at 75. He also filed an emergency

motion for TRO or preliminary injunction "ordering his immediate release from ICE

custody" or, alternatively, "a prompt bond hearing at which the government bears the

burden of demonstrating flight or safety risk by clear and convincing evidence." Dkt. No. 2

at 26. The Court issued an order requiring the respondents to show cause why Candia-

Rincon's petition and motion should not be granted. Dkt. No. 5. The Court gave the

respondents 20 days to file their answer. *Id.* at 1. The respondents timely responded on

December 8, 2025. Dkt. No. 8.

## 2.    Legal Standard

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining

orders and injunctions. A temporary restraining order, or TRO, is "simply a highly

accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*,

No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Thus, the party

seeking a TRO or preliminary injunction must satisfy the same four-factor standard for

preliminary injunctive relief. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D.

Tex. 2021). The party seeking relief must show (1) a substantial likelihood of success on the

merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the

movant's favor; and (4) issuing the injunction will not disserve the public interest. *Daniels

Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

A TRO, like any injunction, is an "extraordinary remedy." *Lewis v. S.S. Baune*, 534

F.2d 1115, 1121 (5th Cir. 1976). "The decision to grant [such relief] 'is to be treated as the

exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000)

(quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.

1985)).  To prevail, the movant "must satisfy a cumulative burden of proving each of the four elements" for injunctive relief.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).  "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction."  *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

### 3.   Analysis

Candia-Rincon fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his motion for TRO and preliminary injunction.  The Court recognizes that Candia-Rincon's habeas petition raises additional arguments that were not included in his emergency motion for TRO or preliminary injunction.  Given the need to resolve the motion on an accelerated timeline, the Court will address all other arguments when resolving Candia-Rincon's habeas petition (Dkt. No. 1), which remains pending.

### A.   Candia-Rincon is unlikely to show that his detention without bond violates the Fifth Amendment's Due Process Clause.

Candia-Rincon maintains that his detention without bond contravenes his due process rights under the Fifth Amendment.  Dkt. No. 2 at 14–17.  His argument, however, suffers from several flaws.  First, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court upheld the constitutionality of Section 1226(c) of the INA, which requires that certain aliens be detained during removal proceedings without bond.  538 U.S. 510, 522 (2003).  The Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed,

"when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. To the contrary, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. Accordingly, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.

Candia-Rincon ignores these background principles. Instead, he relies solely on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 2 at 14–17. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). Candia-Rincon provides no reason why the Court should apply *Mathews* here.

That said, Candia-Rincon's detention is likely constitutional even under *Mathews*. Applying that test, courts consider: (1) the individual's private interest; (2) the risk of erroneous deprivation of the right absent further procedures; and (3) the government's interest. 424 U.S. at 335. "Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206 (citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Beginning with the first factor, Candia-Rincon surely "has a significant private interest in being free from detention." Dkt. No. 2 at 15. But the Supreme Court's "longstanding view" is that "the Government may constitutionally detain deportable aliens

– 4 –

during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at
526. Indeed, the Supreme Court "has recognized detention during deportation proceedings
as a constitutionally valid aspect of the deportation process" for more than a century. *Id.* at
523 (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

Next, Candia-Rincon contends that the second factor cuts in his favor because the
lack of a bond hearing absolves the government from having to air its claimed interest in
detaining him (e.g., to assure his appearance at future hearings and to promote public
safety). Dkt. No. 2 at 16. But even if Candia-Rincon is right about factor two, the risk of
erroneous deprivation is outweighed by the government's "sovereign prerogative[s]" in
matters of immigration. *Landon*, 459 U.S. at 34; *see Dep't of State v. Muñoz*, 602 U.S. 899,
912 (2024) (noting the government's "sovereign authority to set the terms governing the
admission and exclusion of noncitizens"). Thus, even if *Mathews* applies, Candia-Rincon
has not shown a substantial likelihood of success on his procedural due process claim.

## B.    The text of the INA weighs heavily against Candia-Rincon's position regarding the availability of bond.

Candia-Rincon also argues that his detention without bond violates the INA. Dkt.
No. 2 at 17. As he puts it, his detention "is governed by the discretionary framework of 8
U.S.C. § 1226, which mandates the very bond hearing he has been denied." *Id.* at 18. The
respondents, for their part, maintain that Candia-Rincon is subject to mandatory detention
under 8 U.S.C. § 1225.[1] Dkt. No. 8 at 9. Whether the INA's mandatory-detention or
discretionary-detention provision applies here is a question of statutory interpretation.

---

[1] Although Section 1226(c) also mandates detention for certain classes of aliens, this Order refers to
Sections 1225 and 1226 as the mandatory- and discretionary-detention provisions, respectively, for
the sake of simplicity.

– 5 –

When the Court interprets statutes, "[t]he statutory text is invariably the first and primary consideration." *Barr v. SEC*, 114 F.4th 441, 448 (5th Cir. 2024). And if the text is "clear and unambiguous, the interpretive inquiry ends." *Id.*

The Court is unpersuaded that the INA's mandatory-detention provision is "unambiguously" limited to "arrival[s] at a port of entry or the border, not to an arrest occurring long after the act of entry is complete." Dkt. No. 2 at 18. The mandatory-detention provision applies to "applicants for admission," not merely arriving aliens. 8 U.S.C. § 1225(b). To be sure, an arriving alien is an applicant for admission: Subsection 1225(a)(1) defines applicant for admission, in part, as "[a]n alien . . . who arrives in the United States." But the same provision also defines an applicant for admission as "[a]n alien present in the United States who has not been admitted." *Id.* Granted, this is not the most intuitive definition of the term. But it is the one that Congress enacted into law. And although courts generally construe statutory terms according to their ordinary meaning, "'[w]hen a statute includes an explicit definition, [the Court] must follow that definition,' even if it varies from a term's ordinary meaning." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)). Thus, given that Candia-Rincon is "[a]n alien present . . . who has not been admitted," the plain language of the mandatory-detention provision weighs heavily against his assertion that he is subject only to discretionary detention. § 1225(a)(1); *see also Garibay-Robledo v. Noem*, No. 1:25-CV-177, 2025 WL 3264478, at *2–4 (N.D. Tex. Oct. 24, 2025) (denying reconsideration of a TRO because the petitioner was an applicant for admission under the mandatory-detention provision); *Montoya Cabanas v. Bondi*, No. 4:25-CV-4830, 2025 WL

3171331, at *4–6 (S.D. Tex. Nov. 13, 2025) (adopting *Garibay-Robledo*'s reasoning in denying a habeas petition).

The Executive Office of Immigration Review's (EOIR) regulations, which were drafted following the Illegal Immigration Reform and Immigration Responsibility Act of 1996's (IIRIRA) enactment, confirm this understanding of the term "applicants for admission." One such regulation provides that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added). This regulation explains that "[t]he effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing the authority to deny bond to broad classes of aliens, the government previously declined to exercise the full extent of its authority under the INA.

But in July 2025 DHS issued a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, No. 2:25-CV-1542, 2025 WL 2676082, at *5 (D. Nev. Sept. 17, 2025) (describing the leaked DHS notice and noting that the government did not object to its authenticity). This notice advised that "section 235 of the [INA], rather than section 236"—that is, the mandatory-detention provision, not the discretionary-detention provision—"is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr.

Laws. Ass'n (July 8, 2025).[2]  The BIA adopted this broader application of the mandatory-detention provision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).  The BIA acknowledged that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," but it did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.* at 225 n.6.

## C.    The statutory history of the INA supports the Court's interpretation of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for interpreting statutory language. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Coos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)).  And the statutory history of the INA confirms the Court's interpretation of the term "applicants for admission."

By enacting the IIRIRA, Congress sought to replace the so-called entry doctrine, in which the manner of immigration proceedings turned on whether an alien had entered the country, with a process based on admission. *See Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) ("Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'").  Under the entry doctrine, an alien who had entered the United States was entitled to greater procedural protections, including a deportation hearing. *Id.* The result was a system that rewarded aliens who illegally entered the country with greater procedural protections than those who properly applied for admission at the border.

---

[2] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

Thus, the IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures. *Id.* The INA defines "admission" as "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). By defining "applicants for admission" broadly enough to encompass both arriving aliens and illegal entrants, Congress removed the previously existing incentives to enter the country illegally.

### D.   Candia-Rincon's remaining arguments are unpersuasive.

According to Candia-Rincon, the respondents ignore that an alien must be "seeking admission" to fall under the INA's mandatory-detention provision. Dkt. No. 2 at 18. Therefore, he argues, that provision cannot apply to aliens who were apprehended inside the United States years after their illegal entry. *Id.* But the way that the INA uses the term "seeking admission" illustrates that it is merely a corresponding gerund phrase for "applicant for admission." Subsection 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission *or otherwise seeking admission* . . . shall be inspected." (emphasis added). Subsection 1225(a)(5) states that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States." (emphasis added). The logical import of this phrasing is that one who is an applicant for admission is considered to be "seeking admission" under the statute. Put another way, there is no material disjunction—by the terms of the statute or the English language—between the concept of "applying" for something and "seeking" something. Black's Law Dictionary defines "applicant" as "[s]omeone who requests something; a petitioner, such as a person who applies for letters of administration." (12th ed. 2024). Thus, an applicant for

– 9 –

admission, in ordinary English usage, is one who requests (or seeks) something. Insofar as the term "applicant for admission" is more passive than "seeking admission," this is inherent in the nature of agent nouns and their corresponding gerunds.

Next, Candia-Rincon argues that the respondents' interpretation of Section 1225 renders the recent Laken Riley Act (LRA) superfluous. Dkt. No. 2 at 19–21. The LRA—enacted in January 2025—mandates detention for aliens who are inadmissible and have been arrested for, charged with, or convicted of certain crimes. As the argument goes, if the respondents are correct that Section 1225 requires detention for all inadmissible aliens, then the LRA "would be a meaningless legislative act." *Id.* at 20. But as Judge Eskridge explains in *Montoya Cabanas*, "prior Administrations for decades applied [the discretionary-detention provision] to individuals like [the] [p]etitioner." 2025 WL 3171331, at *6. Therefore "at the time of enactment, the Laken Riley Act *did* have [real] effect, given that it *required* mandatory detention for criminal, inadmissible aliens who had not been subject to it . . . by longstanding practice of prior Administrations." *Id.* (emphasis in original). Thus, the LRA was far from meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226.

Moreover, Candia-Rincon's superfluity argument, standing alone, is an insufficient basis to depart from the clear statutory text. The Supreme Court "has often recognized [that] '[s]ometimes the better overall reading of [a] statute contains some redundancy.'" *Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)). More to the point, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Id.* Indeed, the canons of statutory construction should only "be used to resolve remaining

– 10 –

ambiguity," not to inject it where it does not exist. *Moore*, 71 F.4th at 395. Because the

statutory text is clear, the Court must apply it as written. *See supra*, Section 3.B.

**4.    Conclusion**

Because Candia-Rincon fails to show a substantial likelihood of success on the

merits, the Court denies his emergency motion for TRO or preliminary injunction (Dkt. No.

2). Candia-Rincon's habeas petition (Dkt. No. 1) remains pending.

So ordered on December 11, 2025.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE