UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

ANTONIO CANDIA-RINCON,

    Petitioner,

v.

                                 No. 1:25-CV-251-H

MARKWAYNE MULLIN, et al.,[1]

    Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Antonio Candia-Rincon, a native and citizen of Mexico, is one such alien, having illegally entered the United States over twenty years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands his immediate release or a bond hearing based on the text of the INA, its implementing regulations, and the Fifth Amendment's Due Process Clause. Dkt. No. 1.

In light of *Buenrostro-Mendez*, only Candia-Rincon's due process claim remains. But due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Candia-Rincon are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

---

[1] Markwayne Mullin replaced Kristi Noem as Secretary of Homeland Security on March 26, 2026. Thus, he is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

1.    **Background**

Candia-Rincon illegally entered the United States in 2004 and has remained here since. Dkt. No. 1 ¶ 25. He has three children, including two U.S. citizen children. *Id.* ¶ 22. In 2018, he was arrested and later convicted for assault. *Id.* ¶ 26; Dkt. No. 8 at 6. At that time, ICE encountered Candia-Rincon and placed him into removal proceedings with a Notice to Appear. *See* Dkt. No. 9 at 9. The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.*; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Candia-Rincon was later released on bond, but was re-detained by ICE in November 2025. Dkt. No. 1 ¶ 28. He has remained in detention since that date at the Bluebonnet Detention Center in Anson, Texas. *Id.* ¶ 29.

It is unclear whether Candia-Rincon requested a bond hearing. *See* Dkt. No. 1 ¶¶ 15, 138. But doing so would be futile in light of the Board of Immigration Appeals' opinion in *Matter of Yajure Hurtado*, which held that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[2]

---

[2] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. 813 F. Supp. 3d 692, 705–10 (N.D. Tex. 2025). After hearing oral argument on the issue, the Ninth Circuit issued a stay pending appeal of the Central District's class-certification order, final judgment, and post-judgment vacatur of *Yajure Hurtado* on March 31, 2026. *See Maldonado Bautista v. EOIR*, Nos. 25-7958 & 26-1044, Dkt. No. 17 at 4 (9th Cir. March 31, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Candia-Rincon's petition does not present an exhaustion problem. *Id.*

Candia-Rincon filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states three claims for relief—one involving Sections 1225 and 1226 of the INA, one based on the Fifth Amendment's Due Process Clause, and another based on the INA's implementing regulations. *Id.* ¶¶ 156–64. The Court ordered the respondents to show cause why Candia-Rincon's petition should not be granted. Dkt. No. 5. The respondents answered (Dkt. Nos. 8; 9) but Candia-Rincon did not file a reply.

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 754 (N.D. Tex. 2026)).

## 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment

or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3.    Analysis

Candia-Rincon raises three claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, one based on the Fifth Amendment's Due Process Clause, and one based on the INA's implementing regulations. Dkt. No. 1 ¶¶ 156–64. As explained below, *Buenrostro-Mendez* forecloses Candia-Rincon's statutory and regulatory claims. Thus, the only claim left for consideration is his due process claim. The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[3] Even so, the Court considers the arguments raised in Candia-Rincon's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

**A.    *Buenrostro-Mendez* forecloses Candia-Rincon's INA and regulatory claims.**

Candia-Rincon challenges his detention as unlawful under the INA and its implementing regulations. *Id.* ¶¶ 156–58, 163–64. But he is an "applicant for admission" within the meaning of Section 1225(a)(1). Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who

---

[3] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 814 F. Supp. 3d 747; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

arrives in the United States." 8 U.S.C. § 1225(a)(1). Candia-Rincon is an "alien." He is "present in the United States." And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498.

As for the INA's implementing regulations, even if Candia-Rincon's reading of the relevant regulations were correct, he is not entitled to relief. Insofar as such regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'" *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).[4] Thus, Candia-Rincon's INA claim fails.[5]

**B.     The Due Process Clause does not require the government to give Candia-Rincon a bond hearing.**

**i.     Due Process Right to a Bond Hearing**

Next is Candia-Rincon's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 159–62. He argues that he "has a fundamental interest in liberty and being free from official restraint," and that his detention "without a bond redetermination hearing . . . violates her

---

[4] The Fifth Circuit noted that "the government's past practice" of treating unadmitted aliens as subject to Section 1226(a) pursuant to those regulations "has little to do with the statute's text." *Buenrostro-Mendez*, 166 F.4th at 506.

[5] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.3.

[sic] right to due process." *Id.* ¶¶ 161–62. His claim sounds in both substantive and procedural due process. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."

*Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Candia-Rincon has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding her application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Candia-Rincon's claim relies instead on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶¶ 145–55. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews.*" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, 814 F. Supp. 3d 712, 725 (N.D. Tex. 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a

level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

### ii.    Retroactivity

Candia-Rincon also raises a retroactivity claim. His claim relies on the Fifth Circuit's opinion in *Monteon-Camargo v. Barr*, 918 F.3d 423 (5th Cir. 2019), which is a case arising under the Due Process Clause's prohibition against retroactive application of administrative rules. Dkt. No. 1 ¶ 138. But his reliance is misplaced. "Being found in the United States illegally is a continuing offense that . . . continues until the defendant is found." *United States v. Hernandez-Flores*, 460 F. App'x 434, 435 (5th Cir. 2012) (citing *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996)). Candia-Rincon was only re-detained in November 2025—well after *Yajure Hurtado* went into effect. Dkt. No. 1 ¶ 28. His detention thus presents no retroactivity problem.

### C.    *Buenrostro-Mendez* forecloses Candia-Rincon's frivolous Fourth Amendment argument.

Finally, Candia-Rincon invokes the Fourth Amendment nearly two-dozen times throughout his 76-page petition. Although he does not raise a Fourth Amendment claim, he invokes the canon of constitutional avoidance in support of his statutory argument,

arguing that Section 1225(b)(2)(A) must be construed to apply only "at or near the border." Dkt. No. 1 ¶ 127. This is so, he argues, because "allow[ing] DHS to arrest or detain aliens in the interior of the United States" without a statutory warrant requirement "is unconstitutional." *Id.*

The Court is unconvinced. For one, it is well-established that "[t]he Fourth Amendment does not require a warrant for an arrest made on probable cause." *United States v. Fortna*, 796 F.2d 724, 739 (5th Cir. 1986) (citing *United States v. Watson*, 423 U.S. 411 (1976)). And Candia-Rincon acknowledges that the probable-cause standard is embedded in the statute authorizing immigration officers to make arrests. Dkt. No. 1 ¶ 126 (citing 8 U.S.C. § 1357); *see also* 8 C.F.R. § 287.8(c). With the constitutionally sufficient standard applied to immigration officers' statutory and regulatory arrest authority, the Court sees no need to invoke the constitutional-avoidance canon. This is particularly so, given that Section 1225 does not admit of a "fairly possible" construction that would limit its application to aliens at or near the border. *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

Candia-Rincon is therefore correct that, "[g]iven the clarity of the law in this area, the point need not be belabored." *Id.* ¶ 128. His Fourth Amendment argument is both frivolous and squarely foreclosed by *Buenrostro-Mendez*, which adopted precisely the construction Candia-Rincon opposes on Fourth Amendment grounds. 166 F.4th at 498.

### 4.    Conclusion

In short, Candia-Rincon, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. Nothing about the Due Process Clause requires a contrary conclusion. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

– 9 –

So ordered on May \_\_1\_\_, 2026.

_____

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE